IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 28, 2018

## MOHAMMED BASSIM AL-KHAFAJY, AKA MOHAMMED BASSIM AL-KHAFIY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2016-B-963      Cheryl A. Blackburn, Judge**

———————————————————

**No. M2017-02392-CCA-R3-PC**

———————————————————

Petitioner, Mohammed Bassim Al-Khafajy, aka Mohammed Bassim Al-Khafiy, was indicted on multiple counts of drug and weapons charges after a police surveillance operation. He eventually pled guilty to one count of possession with intent to sell or deliver more than one half an ounce of marijuana and one count of possession of a firearm during the commission of a dangerous felony in exchange for a two-year sentence on the drug conviction and a mandatorily consecutive three-year sentence to be served at 100 percent on the firearm conviction. Petitioner sought post-conviction relief on the basis of ineffective assistance of counsel and the unknowing and involuntary nature of his plea. The post-conviction court denied relief and Petitioner appealed. After a review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Mohammed Bassim Al-Khafajy, aka Mohammed Bassim Al-Khafiy.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Glenn R. Funk, District Attorney General; and Doug Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In April of 2016, Defendant was indicted by the Davidson County Grand Jury for one count of possession of a controlled substance with the intent to sell or deliver; one count of employing a firearm during the commission of a dangerous felony; one count of delivery of a controlled substance; one count of reckless endangerment; one count of possession of a weapon at a place open to the public; one count of assault of a law enforcement officer; one count of possession of drug paraphernalia; and one count of resisting arrest.

On September 22, 2016, Petitioner pled guilty to one count of possession with intent to sell or deliver more than one half an ounce of marijuana and one count of possession of a firearm during the commission of a dangerous felony in exchange for a two-year sentence on the drug conviction and a mandatorily consecutive three-year sentence on the firearm conviction. The two-year sentence was to be served at thirty percent and the firearm conviction was to be served at 100 percent. At the plea hearing, the State relayed that the proof at trial would have been as follows:

> [O]n February the 8th, 2016, . . . officers were conducting surveillance on a vehicle. [Petitioner] was one of the occupants of that vehicle. He did aim a handgun and shoot it in the air, and he was seen by officers doing that. When he was taken into custody, a search of the car revealed thirty grams of marijuana and some scales with marijuana residue.

Petitioner received jail credit from February 8, 2016, to September 22, 2016, on the sentence for the possession of marijuana conviction. All of the remaining counts of the indictment were dismissed. After receiving a letter from the Department of Correction dated October 6, 2016, the trial court issued a corrected judgment to reflect that the firearm conviction carried a "mandatory minimum sentence of three years" to be served consecutively to the marijuana conviction.[1]

In March of 2017, Petitioner filed a "Motion to Reopen Post-conviction Petition." In the motion, Petitioner complained that he received ineffective assistance of counsel and that his civil rights had been violated. The post-conviction court treated the motion as a petition for post-conviction relief, determined that the petition "may present a colorable claim," and appointed counsel to represent Petitioner. Counsel filed an amended petition for post-conviction relief. In the amended petition, Petitioner alleged that he was denied the effective assistance of counsel and that his guilty pleas were not

---

[1] The letter from the Department of Correction is not included in the technical record but is referenced in the post-conviction court's order denying post-conviction relief. The original judgment merely listed the sentence at "3 years." The corrected judgment form appears in the record to reflect the three-year sentence in a portion of the form specifically designed for the mandatory minimum sentence on the firearm conviction.

entered into knowingly and voluntarily. Specifically, the petition alleged that counsel failed to adequately communicate with him, never explained the law to him, did not interview witnesses or review discovery materials, failed to file and conduct a hearing for pretrial motions, and did not explain the full effect of a guilty plea. As a result of trial counsel's deficiencies, Petitioner "felt coerced into entering his guilty pleas." Petitioner also alleged that he failed to understand the nature and consequences of the guilty plea because he did not understand the "Crooks with Guns" law and that he felt forced to plead guilty because trial counsel failed to communicate with him.

The post-conviction court held a hearing on the petition for relief. At the hearing, Petitioner explained that his family hired trial counsel to represent him on the charges. According to Petitioner, trial counsel visited him "[o]nly once." However, Petitioner admitted on cross-examination that he met with trial counsel, "when [Petitioner] paid him, when he done the violation of probation . . . then, at the arraignment, then at the first discussion and the second discussion." Petitioner received a "packet of a motion for discovery" from trial counsel but did not receive any other paperwork associated with his pending case. Petitioner claimed that trial counsel failed to review the discovery or discuss the facts of the case with him prior to the plea, merely telling him that they were "going to get toasted" if they went to trial. Petitioner admitted that trial counsel filed a motion to reduce bond but claimed that when he asked trial counsel to file a second motion to reduce bond, trial counsel "wouldn't file one." According to Petitioner, trial counsel told him he was "looking at quite a bit" of jail time. Trial counsel informed him that the State was "offering six" years, but Petitioner "wasn't told" what percentage of time he would actually have to serve. Petitioner claimed that trial counsel threatened to withdraw from representation if Petitioner did not take the plea agreement.

Petitioner explained that he "wasn't a felon at that time" of the plea and that he attempted to decipher the "Crooks with Guns" law on his own because trial counsel did not explain the law to him. Petitioner also complained that he wanted trial counsel to file a motion to suppress, claiming that the State withheld evidence prior to trial. Petitioner explained that he was "misled and induced to enter this plea agreement by improper promises made by [trial counsel]." Petitioner explained that he was comfortable with taking a sentence of "11/29" and did not understand that he was giving up his right to appeal with a guilty plea. Petitioner acknowledged, however, that the trial court went over his rights and explained the sentence on the day of the plea hearing. Petitioner claimed that when the trial court asked him if he was forced to take the plea, he "look[ed] down" and "wanted to say something" but failed to say anything. Petitioner explained that he "was being forced to take [the plea]." Petitioner acknowledged that he was familiar with the plea process because he had entered guilty pleas in the past but stated that he "want[ed] a do-over" because he does not "believe that [the guilty plea was] in [his] best interest."

Trial counsel testified that, at the time of the hearing, he had been practicing law for four years. He was hired to represent Petitioner and met with him "at least three times" prior to the guilty plea. Trial counsel talked to Petitioner on the phone "numerous times," was in "contact with his wife," and was even representing Petitioner's mother and sister at the same time. Trial counsel went over the charges with Petitioner and provided him with discovery. Trial counsel "tried to make it very clear" from the beginning of the representation "that when you interject a gun into a situation, especially a situation that involves crimes[,] that that changes the dynamics of the situation greatly." Trial counsel acknowledged that he filed a motion to reduce bond but that the motion was unsuccessful and Petitioner's bond was actually raised after the hearing. Trial counsel was aware that there were several offers from the State, but the State made it clear that the detectives involved would have to approve any plea deal prior to its communication to Petitioner. Trial counsel explained that the main defense was "that the police were lying [about running surveillance on Petitioner] and [that] he was being racially profiled because of his ethnicity." Trial counsel admitted this was "not a very strong criminal defense" because he had no evidence "whatsoever" to support this theory.

Trial counsel explained that he asked another attorney to come and to talk with Petitioner prior to the plea to explain Petitioner's sentence exposure. When trial counsel communicated the final plea offer to Petitioner, he told him to "take it or leave it," cautioning that if the matter went to trial, they were going to get "toasted or smoked." Trial counsel explained the plea at length so that he could "make sure that [Petitioner] understood everything." Trial counsel explained to Petitioner that "100 percent" meant that he would serve "100 percent" of the sentence. Trial counsel recalled telling Petitioner that this was the "best deal we could get."

The post-conviction court took the matter under advisement and issued a written order. In the order, the post-conviction court recounted Petitioner's primary grounds for post-conviction relief as ineffective assistance of counsel and an unknowing and involuntary guilty plea. The post-conviction court noted Petitioner's complaint that trial counsel "failed to adequately communicate with him and explain the nature of the charges" but also pointed out that Petitioner conceded he was present during both the preliminary hearing and the bond hearing and was, therefore, able to hear the evidence against him. Additionally, the post-conviction court recounted Petitioner's concession that trial counsel met with him on more than one occasion to discuss the case. The post-conviction court heard Petitioner's complaint that trial counsel failed to file a motion to suppress but noted that Petitioner failed to allege what evidence should have been suppressed. The post-conviction court also noted Petitioner's allegation that he was "mischarged" because he did not have a prior felony conviction but found that Petitioner confused the offenses of felon in possession of a firearm with possession of a firearm

during the commission of a dangerous felony. The post-conviction court concluded Petitioner failed to provide clear and convincing evidence of his ineffective assistance of counsel claim, instead accrediting the testimony of trial counsel with respect to the number of times trial counsel visited Petitioner, trial counsel's explanation of the charges and possible sentence ranges to Petitioner, and trial counsel's determination that a motion to suppress was unwarranted.

With respect to the knowing and voluntary nature of the guilty plea, the post-conviction court noted that the trial court "thoroughly explained to Petitioner the consequences of entering the guilty plea and the rights he was waiving." The post-conviction court noted that the plea colloquy supported the determination that the plea was knowingly and voluntarily entered. As a result, the post-conviction court denied relief. Petitioner filed a timely notice of appeal.

*Analysis*

On appeal, Petitioner argues that the post-conviction court improperly denied relief. The crux of Petitioner's argument is that the post-conviction court did not believe Petitioner's version of the events. Petitioner also argues that he is entitled to relief due to trial counsel's cumulative errors. The State, on the other hand, notes that the trial court accredited the testimony of trial counsel over that of Petitioner and that the evidence does not preponderate against those factual findings of the trial court.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*I. Ineffective Assistance of Counsel*

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). This right extends to critical pre-trial stages, including plea bargaining. *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). In order to sustain a claim of ineffective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999); *see also Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors,

- 6 -

the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

Petitioner claims that he received ineffective assistance of counsel. However, in Petitioner's brief, he points to no facts which show that trial counsel was deficient. Petitioner merely refers to his own testimony about trial counsel's alleged lack of communication, failure to explain the charges, and threat to withdraw if Petitioner did not take the guilty plea. In the next sentence, Petitioner complains that "the cumulative effect of the errors and omissions committed by counsel" resulted in a coerced and unknowing plea. At the post-conviction hearing, trial counsel testified that he met with Petitioner multiple times, reviewed all of the discovery materials, and successfully bargained with the State for a lower sentence for Petitioner. Additionally, the post-conviction court accredited the testimony of trial counsel, and that determination rests solely with the post-conviction court. *See Fields*, 40 S.W.3d at 456. We fail to see how trial counsel's representation could be considered below an objective standard of reasonableness. Accordingly, Petitioner has failed to show that he received deficient representation.

## II. *Voluntary Nature of Guilty Plea*

Petitioner also argues that he did not knowingly and voluntarily enter his plea agreement. When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). In that review, the court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from trial.

*Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.* at 904. A petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable

barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

At the post-conviction hearing, Petitioner claimed that he did not understand his sentence and that he did not understand the law requiring him to serve a mandatory minimum sentence at 100 percent. However, Petitioner admitted on cross-examination that the trial court explained the sentence at the plea acceptance hearing and that he and trial counsel discussed the plea. Trial counsel testified that he brought in another attorney to sit down and explain the mandatory minimum sentence to Petitioner. The plea colloquy itself establishes that, at the plea hearing, Petitioner knew exactly what his sentence would be on the firearm conviction, three years at 100 percent to be served consecutively to the two-year sentence on the marijuana conviction. Petitioner started to ask the trial court if there was "by any chance that the range of it, at a hundred percent," when the trial court cut him off, interjecting, "That's a particular law that you're charged with. No I can't do anything about it." The trial court went on to explain to Petitioner the definition of a dangerous felony, the requirement that the sentence be served consecutively, and the difference between "employing a firearm versus possessi[ng] a firearm during the commission of or attempt to commit a dangerous felony." Petitioner indicated that the explanation answered his questions.

When considering the aforementioned factors, we note that Petitioner graduated from high school and was able to read. Petitioner admitted to the trial court that he was familiar with the plea process, having entered guilty pleas in the past. Trial counsel met with Petitioner and discussed plea negotiations as well as the likelihood of success at trial. Trial counsel and the trial court adequately advised Petitioner of the nature of his plea. Additionally, the post-conviction hearing focused on Petitioner's understanding of the guilty plea. Viewing the totality of the circumstances with the formidable barrier created by Petitioner's declaration at the plea hearing in mind, we hold that the evidence does not preponderate against the post-conviction court's finding that Petitioner's plea was knowing and voluntary.

*Conclusion*

For the aforementioned reasons, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE